UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**RICHARD C. MARTEL, ET AL.**          CASE NO. 6:21-CV-00110

**VERSUS**                              JUDGE ROBERT R. SUMMERHAYS

**B. RILEY WEALTH MGMT., INC.**         MAGISTRATE JUDGE AYO

MEMORANDUM RULING

The present matter before the Court is the Motion for Summary Judgment [ECF No. 29] filed by defendant B. Riley Wealth Management, Inc. seeking dismissal of plaintiffs' business negligence claims. Plaintiffs Richard Comeau Martel, Charlene Comeaux Kennedy, Susie Comeaux Heroman, Patrice Comeaux Ellis, Robert Comeaux, Jr., Lisa Comeaux, Laura Comeaux, Douglas Comeaux, and Nicole Comeaux (collectively, the "Plaintiffs") filed an opposition to the motion [ECF No. 33]. For the reasons states below, the Court GRANTS the Motion for Summary Judgment.

I.
BACKGROUND

**A.  Overview.**

The present case involves disputes over investment accounts owned by Marie Therese Comeaux ("Comeaux") and Marie Jeanne Comeaux Dimauro ("Dimauro") with their niece, Marguerite Lormand Levy ("Levy"). Comeaux and Dimauro died in 2006 and 2014, respectively. The plaintiffs are relatives of Comeaux and Dimauro, and apparently were beneficiaries of the decedents' estates. They contend that the defendant, B. Riley Wealth Management, Inc. f/k/a Wunderlich Securities, Inc. ("B. Riley") was negligent in allowing Levy, Comeaux, and Dimauro to open their investment accounts as joint tenants with right of survivorship—a legal concept not

recognized in Louisiana. They suggest that, as a result, the proceeds of the two investment accounts were improperly excluded from Comeaux's and Dimauro's estates.

**B.      Comeaux's Investment Accounts and Estate.**

The summary judgment record shows that Comeaux and Levy opened an investment account with B. Riley as joint tenants with right of survivorship in December 2005.[1] Comeaux had previously purchased a $100,000.00 annuity from the Manufacturers Life Insurance Company of North America ("Manulife") in December 2000—five years before opening her B. Riley investment account with Levy.[2] This annuity was subsequently converted to a John Hancock Life Insurance Company (U.S.A.) Venture Annuity.[3] Comeaux then purchased an additional $200,000.00 worth of annuities from John Hancock on July 26, 2005—approximately six months before opening her B. Riley investment account.[4] The annuities were first reflected on Comeaux's B. Riley investment account statement in May 2006.[5] The May 2006 account statement showed that Comeaux held John Hancock annuities with an estimated market value of $293,359.15 as of May 31, 2006.[6] The total cost of the annuities was $300,000.00.[7] The B. Riley account statements in the summary judgment record state that:

> Annuities are held directly by the issuing insurance company, not in the brokerage account. Annuity values and all sub fund information is provided directly from the insurance companies ... Please contact Your Financial Advisor if you no longer own any of the annuity positions listed below.[8]

---

[1] ECF No. 29-3 at ¶ 5 (Declaration of Michael Markunas).
[2] ECF No. 29-4.
[3] ECF No. 29-5.
[4] ECF No. 29-6.
[5] ECF No. 29-7.
[6] *Id*. at 6.
[7] *Id*.
[8] *Id*.

In July 2006, Comeaux purchased an additional $150,000.00 worth of annuities from John Hancock.[9] Comeaux died on October 10, 2006.[10] At the time of her death, Comeaux had purchased a total of $450,000.00 worth of annuities.[11] The investment account statement issued the month Comeaux died showed that Comeaux's John Hancock annuities made up 86.07% of her reported investment portfolio.[12] The designated beneficiaries of the annuities' death benefits were Levy and Mary Ellen Comeaux McDade ("McDade").[13] The annuity contracts provided that Levy was a 60% beneficiary and McDade was the beneficiary of the remaining 40% of the death benefits.[14] John Hancock paid out $276,776.95 to Levy and $184,517.96 to McDade.[15]

On October 23, 2006, Levy was confirmed as an Independent Co-Executor of the Succession of Marie Therese Comeaux.[16] Letters of Independent Administration certifying Levy as an Independent Co-Executor for the Succession of Marie Therese Comeaux were also issued on October 23, 2006.[17] On August 9, 2007, the Detailed Descriptive List of all items comprising the Succession of Marie Therese Comeaux was filed with the Louisiana state district court.[18] The Detailed Descriptive List identified the value of Comeaux's investment account as $144,811.80 and listed an IberiaBank account belonging to Comeaux.[19] On June 20, 2007, a wire transfer of $322,945.52 was initiated from Comeaux's B. Riley investment account to Levy's account at IberiaBank, and the account was closed in September 2008.[20] The state court entered the Judgment

---

[9] ECF No. 29-8.
[10] ECF No. 29-9
[11] *Id*.
[12] ECF No. 29-10 at 1.
[13] ECF Nos. 29-11, 29-12.
[14] ECF No. 29-11.
[15] ECF No. 29-12.
[16] ECF No. 29-14.
[17] ECF No. 29-15.
[18] ECF No. 29-16.
[19] *Id*. at 2.
[20] ECF No. 29-13; ECF No. 3 at ¶ 7.

of Possession on August 9, 2007.[21] The state court waived a final accounting of the succession and discharged Levy as Independent Co-Executor of the Succession.[22]

C. **Dimauro's Investment Accounts and Estate.**

Dimauro and Levy opened an investment account with B. Riley as joint tenants with right of survivorship in December 2005.[23] Prior to opening a B. Riley account, Dimauro purchased an annuity from Pacific Life Insurance Company ("Pacific Life") on or about January 30, 2001.[24] Between the date of the initial purchase and November 17, 2006, Dimauro purchased a total of $588,000.00 worth of annuities from Pacific Life.[25] The annuities were first reflected on Dimauro's May 2006 B. Riley investment account statement in the amount of $494,650.30 as of May 31, 2006.[26] As with Comeaux's account statement, Dimauro's account statement explained that her annuity contracts were held directly by Pacific Life and that they were not part of her investment account.[27] As of July 31, 2014, the estimated market value of Dimauro's annuities was $610,319.80, and the annuities accounted for 99.88% of Dimauro's reported investment assets.[28]

After Dimauro's death in 2014, the death benefits from her annuities were paid to Levy and Mary Ellen Comeaux McDade pursuant to the annuity contract's beneficiary designations.[29] As with Comeaux's annuities, Dimauro's annuity contracts provided that Levy was a 60% beneficiary and McDade was the beneficiary of the remaining 40% of the death benefits.[30] Pacific

---

[21] ECF No. 29-17.
[22] *Id*. at 4.
[23] ECF No. 3 at ¶ 8.
[24] ECF No. 29-18.
[25] ECF No. 29-19 at 3.
[26] ECF No. 29-20 at 5.
[27] *Id*.
[28] ECF No. 29-22 at 1.
[29] ECF Nos. 29-23, 29-24.
[30] ECF No. 29-23.

Life paid out $360,537.14 to Levy and $238,729.27 to McDade.[31] As of July 31, 2014, the only assets B. Riley held in Dimauro's account was $763.33 in cash.[32] The remaining assets from Dimauro's investment account were transferred to Levy, as Independent Executor of the Succession of Marie Jeanne Comeaux Dimauro, on or about April 1, 2015.[33]

**D.   Procedural Background.**

Plaintiffs commenced the following action in the 15th Judicial District Court, Lafayette Parish, Louisiana, on November 25, 2020.[34] In their state court petition, Plaintiffs allege that B. Riley's predecessor, Wunderlich Securities, Inc., opened accounts for the two decedents, Comeaux and Dimauro, together with Levy, as "joint tenant[s] with rights of survivorships."[35] Plaintiffs further allege that after the death of Comeaux and Dimauro, B. Riley allowed Levy to transfer the funds from their accounts "into another financial account under her sole control and did not include those funds in part of the [Comeaux and Dimauro] estates."[36] Plaintiffs next appear to allege that this transfer of funds occurred because Comeaux and Dimauro's accounts were created as joint-tenant accounts with the right of survivorship.[37] Plaintiffs allege that "joint tenancy with rights of survivorship is not a legal concept that is recognized in Louisiana."[38] Plaintiffs then appear to allege that B. Riley's creation of the account and the transfer of funds to Levy amounts to "business negligence" and that this negligence "led to [Levy's] conversion of the funds in the [B. Riley] accounts and damaged the [Plaintiffs] as successors of [Comeaux and Dimauro] estates.[39]

---

[31] ECF No. 29-24.
[32] ECF No. 29-22 at 1.
[33] ECF No. 29-28.
[34] ECF No. 1-2.
[35] *Id*. at 7, ¶ 3.
[36] *Id*. at 8, ¶ 7.
[37] *Id*. at ¶ 8.
[38] *Id*. at ¶ 10.
[39] *Id*. at ¶ 12.

Plaintiffs' complaint then goes on to allege misconduct on the part of Levy.[40] Plaintiffs' state court petition alleges no other grounds for claims against B. Riley. On January 15, 2021, B. Riley removed the action to federal court based on diversity jurisdiction under 28 U.S.C. § 1332.

## II.
### DISCUSSION

**A.    Duty of Care.**

B. Riley first argues that Plaintiffs' business negligence claims should be dismissed because it did not owe any duty of care to Plaintiffs. A negligence claims requires proof that: (1) the defendant owed the plaintiff a duty to conform its conduct to a specific standard of care; (2) the defendant breached that standard of care; (3) this breach was a legal cause of the plaintiffs' injuries; and (4) the plaintiff sustained actual damages.[41] Louisiana law imposes fiduciary duties on "individuals and on the corporations for which they work when they are charged with managing another person's investments."[42] The fiduciary duties owed to a stockbroker's clients include a duty of care.[43] B. Riley and its employees thus owed fiduciary duties, including a duty of care, to its three account holders—Comeaux, Dimauro, and Levy. There is no evidence in the summary judgment record that Plaintiffs were account holders or otherwise had any relationship with B. Riley, its predecessors, or its employees in connection with the accounts at issue. At most, Plaintiffs were potential beneficiaries of Comeaux and Dimauro's estates. Plaintiffs have cited no Louisiana case extending a stockbroker's duty of care to potential beneficiaries of a client's estate. Courts in other jurisdictions, however, have limited the reach of a stockbroker's duties to non-clients, absent some relationship between the stockbroker and the non-client. For example, in

---

[40] *Id.* at ¶ 13.
[41] *Bukin v. Felipe's Louisiana, LLC*, 171 So.3d 851 (La. 10/15/14).
[42] *Cleveland v. UBS Financial Services, Inc.*, No. 10-cv-2729, 2011 WL 13213640, at *5 (*citing Beckstrom v. Parnell*, 730 So.2d 942, 947-48 (La. App. 1st Cir. 11/6/98)).
[43] *Beckstrom*, 730 So.2d at 948.

*Kolbeck v LIT America, Inc.*,[44] the court held that "security brokers do not owe a general duty of care of disclosure to the public simply because they are market professionals." According to the court, a "duty of care arises only when the broker does business with the plaintiff. Then, the duty of the broker is to attend to the plaintiff's business with due care."[45] Similarly, in *Owens v. Stifel, Nicolaus & Co.*, the court observed that a stockbroker owes duties to his or her client but "that duty only 'extends to those persons, or the limited class of persons who the professional is actually aware will rely upon the information prepared.'"[46] In the present case, Plaintiffs have not come forward with any evidence that they ever did business with B. Riley or had any connection with Comeaux and Dimauro's investment accounts. Nor does the summary judgment record include any evidence that Plaintiffs relied on any information B. Riley provided regarding the creation and status of Comeaux and Dimauro's accounts.

Although not pled in their state court petition, Plaintiffs suggest in their opposition that Comeaux and Dimauro were physically and mentally incompetent, and that Levy exercised undue influence over them to the detriment of Plaintiffs as beneficiaries of Comeaux and Dimauro's estates. However, Plaintiffs point to no evidence that would extend any duty of care on the part of B. Riley to them given these facts. To the extent that Plaintiffs are alleging a claim that B. Riley breached its duty of care—or any other fiduciary obligations—to Comeaux and Dimauro, they have not established that they have standing to assert a breach of duty claim on behalf of Comeaux and Dimauro's estates. In sum, the Court concludes that B. Riley owed no duty of care to Plaintiffs and that B. Riley is, therefore, entitled to summary judgment on Plaintiffs' negligence claims.

---

[44] 923 F. Supp 557, 571-72 (S.D. N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998).
[45] *Id*. at 572.
[46] No. 12-cv-144, 2014 WL 2335199, *6 (M.D. Ga. June 5, 2014) (quoting *Badische Corp. v. Caylor*, 356 S.E.2d 198 (1987)).

## B. Breach of Duty.

B. Riley further argues that even if it owed a duty of care to Plaintiffs, its actions with respect to Comeaux and Dimauro's accounts did not breach that duty of care. The Court agrees. The bulk of Dimauro and Comeaux's B. Riley's accounts consisted of annuities issued by John Hancock Life Insurance Company and Pacific Life Insurance Company.[47] The summary judgment record shows that "Dimauro's annuities accounted for 99.88% of Dimauro's reported assets and 86% of Comeaux's account."[48] B. Riley points to language in Comeaux and Dimauro's account statements that their annuities with John Hancock and Pacific Life "are held directly by the issuing insurance company, and not the brokerage account." When Comeaux and Dimauro died, B. Riley was obligated to distribute the death benefits under those annuities according to the terms of the annuity contracts—and not the terms of B. Riley's investment accounts. Accordingly, B. Riley distributed the death benefits for both Comeaux and Dimauro according to the terms of their annuity contracts.[49] With respect to any remaining proceeds of Comeaux and Dimauro's investment accounts, the evidence in the summary judgment record indicates that B. Riley followed the instructions of Levy, who was the duly-appointed executor of Comeaux and Dimauro's estates.[50] In sum, Plaintiffs' have not come forward with any evidence that B. Riley, as opposed to Levy, breached any duty of care to Plaintiffs. This presents an independent ground to GRANT B. Riley's Motion for Summary Judgment.

---

[47] ECF No. 29-2 at ¶¶ 3-6, 25-33.
[48] *Id*. at ¶ 33.
[49] *Transamerica Advisors Life Ins. Co. v. Marsch*, No. 16-cv-247, 2017 WL 1098827, at *3 (M.D. La. Mar. 23, 2017) (under Louisiana law "the beneficiary to an annuity contract is entitled to the proceeds of that contract" against all others) (*citing* La. R. S. Section 22:912(1)); *In re. Succession of Catching*, 35 So.3d 449, 452, (La. App. 2d Cir. 4/14/10) (annuity proceeds were excluded from the assets of the decedent's estate).
[50] ECF No. 29-1 at 11-2 ("B. Riley discharged its duty to transfer the funds in accordance with the instructions of the Independent Executrix of the estate—Levy.") (*citing* La. Code Civ. Proc. Ann. Art. 3396.15).

### C. Prescription.

Finally, B. Riley argues that Plaintiffs' claims are prescribed. "The law is well settled that an action in tort prescribes one year from the date the damage is sustained."[51] "[O]nce it is shown that more than one year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including but not limited to the doctrine of *contra non valentem* and the theory of continuing tort."[52] Comeaux and Dimauro opened their B. Riley accounts in December 2005.[53] Comeaux died on October 6, 2006, and the death benefits for Comeaux's annuities were paid in June 2007.[54] The state court entered a "Judgment of Possession" in Comeaux's succession proceeding in August 2007. All of these events occurred more than one year prior to Plaintiffs filing suit in November 2020.

With respect to Dimauro, Dimauro died in July 2014, and the death benefits for her annuities were paid to the contractual beneficiaries of those annuities on August 4, 2014.[55] On April 1, 2015, B. Riley transferred the remaining balance of Dimauro's account—$763.41—to Levy as the independent executrix of Dimauro's estate.[56] As with Comeaux, all of the transactions and events pertaining to Dimauro occurred more than one year prior to the commencement of the present action.

---

[51] *Reed v. Louisiana Horticultural Comm'n*, 2021 WL 6066134, at *3 (La. App. 1 Cir. 12/22/21) (*citing* La. Civ. Code Art. 3492).
[52] *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002) (applying Louisiana Law).
[53] ECF No. 29-1 at 2, 4.
[54] ECF No. 29-2 at ¶¶ 10-15.
[55] ECF No. 29-24.
[56] ECF No. 29-28.

Plaintiffs suggest in their opposition to the Motion for Summary Judgment that they were unaware of these transactions until less than a year prior to filing suit. Specifically, Plaintiffs allege that they "did not discover any damages caused by B. Riley until Plaintiff Martell issued a subpoena in November 2019."[57] B. Riley, however, notes that the subpoena referenced by Plaintiffs was issued on November 13, 2019, over a year before this case was filed.[58] B. Riley alternatively argues that Plaintiffs had constructive knowledge of the transactions at issue well before November 2019. Under Louisiana law, a plaintiff has constructive knowledge of a claim if "at the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry."[59] In that regard, B. Riley points to evidence in the summary judgment record that one of the Plaintiffs, Martell, filed a Motion to Compel Disclosure and Compliance in January 23, 2009; Martel's motion raises some of the same issues and concerns raised in Plaintiffs' state court petition.[60] According to B. Riley, Martel was taking the lead for the other Plaintiffs with respect to the Comeaux and Dimauro successions. B. Riley also points to evidence in the record that the pleadings in the Comeaux and Dimauro succession proceedings disclose the B. Riley investment accounts at issue and that these pleadings were filed more than one year prior to the commencement of the present case. Accordingly, prescription provides an additional ground for granting B. Riley's Motion for Summary Judgment and dismissing Plaintiffs' claims.

---

[57] ECF No. 33 at 7.
[58] ECF No. 34 at 2.
[59] *Eldredge v. Martin Marietta Corp.*, 207 F.3d. 737, 743 (5th Cir. 2000) (*quoting Bergeron v. Pan Am. Assurance Co.*, 731 S.2d 1037, 1042 (La. App. 1999)).
[60] ECF No. 34 at 2 (*citing* ECF No. 29-2 at 6.).

## III.
### CONCLUSION

For the foregoing reasons, the Court GRANTS B. Riley's Motion for Summary Judgment [ECF No. 29] in its entirety. Plaintiffs' claims against B. Riley are DISMISSED WITH PREJUDICE.

THUS DONE in Chambers on this 27th day of September, 2022.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE